In re Darrell Jay GRIMES, Debtor.

Melvin M. FELDMAN,
Trustee, Plaintiff,

v.

Darrell J. GRIMES, Defendant.

Bankruptcy No. 81–1–1360.
Adv. No. 84–0159A.

United States Bankruptcy Court,
D. Maryland,
at Rockville.

Jan. 25, 1985.

Melvin Feldman, Rockville, Md., Trustee of Chapter 7 estate.

John Wesley Days, Silver Spring, Md., for debtor.

MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge.

Darrell Jay Grimes (hereinafter "Debtor"), acting through counsel, filed a petition under Chapter 7 of the Bankruptcy Code on October 9, 1981. Concurrently therewith he filed his Statement of Financial Affairs in which was listed real proper-

ty in West Salem, Wisconsin "[p]resently held as tenants in common with former wife, Beverly I. Grimes." Debtor claimed a $4,500 exemption in this property pursuant to § 522(b)[1] of the Bankruptcy Code and *Md. Cts. & Jud. Proc. Code Ann.* (1974), the Maryland law in effect at that time:

(f) *Additional exemption; condition,*—In addition to the exemptions provided in § 11–504(b) of this subtitle, and in other statutes of this State, in any proceeding under Title 11 of the United States Code entitled "Bankruptcy," any individual debtor domiciled in this State may exempt the debtor's aggregate interest, not to exceed $4,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, or in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence.

*Md. Cts. & Jud. Proc. Code Ann.* § 11–504(f)(1) (1974).[2]

On April 15, 1982, the Wisconsin realty was sold pursuant to an "Agreement Pertaining To Sale of Grimes Realty" (hereinafter "the Agreement") entered into between Beverly Grimes and the trustee in bankruptcy (hereinafter "Trustee"), which Agreement governed the distribution of proceeds between Beverly Grimes and Debtor's estate. Trustee thereafter filed the instant complaint to determine the extent to which Debtor's $4,500 exemption was satisfied by certain credits given him out of the sale proceeds pursuant to para-

graph 3 of the Agreement.[3] Paragraph 3 of the Agreement provides:

3. Mr. Grimes shall be given credit in the divorce court records for complying with the Decree of the Wisconsin Court pertaining to the $3,300 adjustment for property interest, and the $1,698.27 in support arrearages.

In his complaint, Trustee alleges that the $3,300 and $1,698.27 sums ordered in the decree of the Wisconsin Court to be paid by the debtor "constituted liens on the property and/or were nondischargeable debts, and said sums are in excess of the defendant's exemptions in the realty."[4] The complaint appears to emanate from § 522(f)(1) as qualified by § 522(c)(I) "and/or" § 523(a)(5)(B) of the Bankruptcy Code.[5] These sections will be examined in turn with respect to the credits Debtor received under the Agreement.

Section 522(f)(1) of the Code provides that,

[T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is … a judicial lien.

11 U.S.C. § 522(f)(1). The Code defines "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(27). As will be seen hereinafter, the $3,300 and the $1,698.27 sums are part of the Judgment awarded to Bev-

1. All Bankruptcy Code references in this opinion are to the Bankruptcy Reform Act of 1978, prior to the 1984 Amendments, as the statute providing the rule of decision for this matter.

2. By order entered February 24, 1982, this court overruled Trustee's objection to the $4,500 exemption in concluding that the fact the property is located in Wisconsin does not bar the exemption. *In re Grimes,* 18 B.R. 132 (B.C.Md.1982).

3. Debtor-defendant subsequently counterclaimed for payment from the sale proceeds of the amount claimed exempt.

4. Neither party filed a brief nor a memorandum of law in support of his position.

5. There are three documents from the divorce proceedings *In re the marriage of DARRELL J. GRIMES and BEVERLY IRENE GRIMES RESPONDENT,* File No. 79–FA–367, Circuit Court for LaCrosse County, Wisconsin, that were received in evidence from which the parties made their arguments:

(a) Amended Findings of Fact and Conclusions of Law, May 8, 1981 ("Findings");
(b) Second Amended Judgment, May 5, 1981, *nunc pro tunc* to September 12, 1980 ("Judgment");
(c) Order—October 26, 1981 ("Order on Proceeds").

The court will not strive to deal with any issues not raised by the parties.

erly Grimes on May 5, 1981, in the Circuit Court for LaCrosse County, Wisconsin, in the divorce proceeding between Debtor and Beverly Grimes. Under Wisconsin law, judgment awards become a lien on real estate of the judgment debtor. Wis.Stat. § 806.15 (1979–80). The $3,300 and $1,698.27 judgment debts thus constitute judicial liens on Debtor's interest in the Wisconsin realty and are avoidable to the extent that they impair Debtor's claimed exemption of $4,500 on that realty. 11 U.S.C. § 522(f)(1).

However, § 522(c)(1) of the Code states an exception which leads to the grounds of Trustee's complaint:

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case, except ... a debt of a kind specified in ... section 523(a)(5) of this title.

11 U.S.C. § 522(c)(1). Therefore, although Debtor may avoid judicial liens under 522(f)(1), his $4,500 exemption remains liable for a debt described in pertinent part as follows:

> to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that ... such debt includes a liability designated as alimony, maintenance, or support unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5)(B) ("Exceptions to discharge"). The issue thus becomes determining whether either of the $3,300 or $1,698.27 judgment debts is "actually in the nature of alimony, maintenance, or support" and therefore nondischargeable.

The Code does not define "alimony, maintenance, or support." The legislative history of § 523(a)(5) instructs that "[w]hat constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law." H.R. No. 95–595, 95th Cong., 1st Sess., 364 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, reprinted in 9 BKR–L Ed, LEGISLATIVE HISTORY § 82.17, at 376. The courts have heeded that instruction. In re Calhoun, 715 F.2d 1103 (6th Cir.1983); In re Williams, 703 F.2d 1055, 10 BCD 908, 8 CBC 2d 443 (8th Cir.1983); In re Long 39 B.R. 535 (B.C.Ark.1984); In re Shumate, 39 B.R. 808 (B.C.E.D.Tenn.1984) (State court lien held valid insofar as amount secured by lien represented debtor's support obligation); In re Warner, 5 B.R. 434, 6 BCD 788, BLD ¶ 67631 (B.C. Utah 1980). We therefore turn to the appropriate bankruptcy case law.

It is well settled that determining whether a debt is "actually in the nature of alimony, maintenance, or support" requires looking behind the labels used by the parties or the divorce court, looking behind even the state law classification of the obligation, and ascertaining the intention of the parties where there is an agreement or the divorce court where there is none. Melichar v. Ost, 661 F.2d 300, 303 (4th Cir.1981); Pauley v. Spong, 661 F.2d 6, 9 (2nd Cir.1981); In re Coil, 680 F.2d 1170, 1171–72 (7th Cir.1982); Stout v. Prussel, 691 F.2d 859, 861 (9th Cir.1982); Williams v. Williams, 703 F.2d 1055, 1057–58 (8th Cir.1983); Long v. Calhoun, 715 F.2d 1103, 1109 (6th Cir.1983). This is not to say that state law classification is not an important factor in the determination, only that it is not determinative. Melichar, 661 F.2d at 303.

The case at bar differs from many other reported § 523(a)(5) cases in that the description and classification of the subject debts are set forth in the court's Judgment in the court's own words. This distinction is borne out, and its significance brought home, in paragraph 23 of the Judgment.

> 23. Disobedience of the Order and Judgment herein with respect to payment of support money is punishable under Section 295.02 Wis.Stats. by commit[ ]ment to the county jail or house of correction until such Judgment is complied with and the costs and expenses of the proceedings are paid or until the par-

ty committed is otherwise discharged according to law.

With such dire consequences riding on the designation of an obligation as payment of "support money," we turn to the Wisconsin trial court's conclusions of law themselves, including those paragraphs setting out the payment obligations here in dispute.

■ Paragraph 22 of the Wisconsin court's order provides, in pertinent part:

22. That the delinquency in support payments in the amount of $1,698.27 which were to have been in the form of monthly payments to First Federal Savings & Loan Association for mortgage payments and for tax reserve payments are hereby reserved and Darrell Jay Grimes is required to pay the same.

This court has no doubt, and therefore finds, that the payment obligations directed in these paragraphs [6] are not only designated as support but also "actually in the nature of ... support." The $1,698.27 debt is therefore nondischargeable under § 523(a)(5) and Debtor's exemption remains liable for that amount. 11 U.S.C. § 522(c)(1).

The more troublesome part of the Wisconsin court's order deals with the $3,300 debt. The ground for the obligation is laid in paragraphs 10 and 11 of its order (the conclusions of law contain the same language).

10. That the respondent Beverly Irene Grimes is entitled to an amount equal to one-half of the vested interest in the Petitioner's Wisconsin State Retirement Fund, to-wit: the sum of $5,300.

11. That by reason of the foregoing, the wife has received between $3,500 and $4,000 more in personal property than the petitioner husband, but that as a one time maintenance payment or adjustment, the difference is reduced to the sum of $2,000, but the sum of $2,000 is to be deducted from the said $5,300, leaving the wife entitled to the sum of $3,300 to be taken out of the husband's share of

the net equity in the home as hereinafter provided. (Emphasis added.)

The underlined phrase is critical to the decision of this case. The court, in dividing the personal property of the parties, gave Mrs. Grimes the sum of $5,300 for her one-half share of the vested interest of Mr. Grimes in his Wisconsin State Retirement Fund. Because she received $4,000 more in value on the split of all the personal property of the parties, the court applied her overage against her retirement share of $5,300 leaving $1,300. It then, either for a one-time maintenance payment in the nature of lump sum alimony or adjustment of their overall interests, added $2,000 to Mrs. Grimes' share by deducting $2,000 from the overall amount credited to Mr. Grimes.

■ The trustee did not offer any other evidence to support his legal argument that the $3,300 credit represented satisfaction of a nondischargeable debt. The burden of proving nondischargeability of a debt rests upon the party asserting nondischargeability. *Danns v. Household Finance Corp.* 558 F.2d 114, 116 (2d Cir. 1977); *In re Harris*, 7 B.R. 284, 288–289 (S.D.Fla.1980); *In re Materetsky*, 28 B.R. 499, 501 (B.C.S.D.N.Y.1983). The trustee has not sustained that burden of proof. The $3,300 debt charged against debtor's share of proceeds from the sale of the family residence is in the nature of a property division. Because the judgment debt arising therefrom is neither designated as nor actually in the nature of alimony, maintenance, or support, it is the subject of a judicial lien properly avoidable under § 522(f)(1) to the extent that it impairs Debtor's $4,500 exemption, *i.e.*, to the full extent of $3,300.

An order will be entered in accordance with this opinion, which shall constitute the court's findings of fact and conclusions of law.

---

**6.** These payments appear to be missed *pendente lite* payments which, if not specifically mentioned, would be merged in the decree.